IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DAREN PORTER,                          :
                                       :
            Plaintiff                  :
                                       :
      v.                               :      CIVIL NO. 3:CV-15-142
                                       :
UNITED STATES OF AMERICA,              :      (Judge Conaboy)
                                       :
            Defendant                  :

_____

**MEMORANDUM**
**Background**

      Daren Porter (Plaintiff), an inmate presently confined at
the United States Penitentiary, Florence, Colorado initiated this
pro se action pursuant to the Federal Tort Claims Act (FTCA).
Named as Defendant is the United States of America.

      Plaintiff is serving a life sentence for first degree murder
which was imposed by a Michigan state court.  Porter was
transferred into the custody of the Federal Bureau of Prisons (BOP)
as "a contract boarder" in 1999.  Doc. 1, p. 1.  On May 18, 2010,
the BOP designated Plaintiff for placement in a Special Management
Unit (SMU) because of his unfavorable disciplinary history.  The
Plaintiff's pending action asserts claims pertaining to his prior
confinement in the SMU at the United States Penitentiary,
Lewisburg, Pennsylvania (USP-Lewisburg).

      By Memorandum and Order dated March 29, 2016, Defendant's
motion for summary judgment was partially granted.  See Doc. 36.

1

Specifically, Plaintiff's claims of: (1) negligent designation of Porter into the SMU program by the BOP; (2) verbal harassment by Correctional Officer White; and (3) improper assignment of Plaintiff with a cell mate while his arm was in a sling were dismissed without prejudice for non-exhaustion of administrative remedies. Summary judgment was also granted with respect to the FTCA claims against Doctors Ball and Edinger as well as those pertaining to non-BOP employees who treated the inmate at outside hospitals.

Plaintiff contends that Officer White removed Porter from his SMU cell on October 2, 2012 and escorted him to the shower room.[1] While Porter was handcuffed "behind his back", White allegedly "physically and forcefully slammed" him to the floor. Doc. 1, ¶ 16. Plaintiff suffered a broken right collarbone, sprained ankle, and a few minor cuts as a result of this alleged intentional assault and battery.[2]

Following the arrival of other correctional staff, Plaintiff was taken to the inside shower area. EMT Potter performed an initial medical assessment of Porter's injuries. Despite making repeated complaints of pain and shoulder injury to EMT Potter and other correctional staff members, Porter was nonetheless placed in ambulatory restraints "all night." Id. at ¶ 21. Although

---

1. According to the Complaint, Correctional Officer White disliked the Plaintiff, a Black inmate, because he was married to a White woman. White was also allegedly verbally abusive to Plaintiff during the escort.

2. Plaintiff was found not guilty of a misconduct charge filed by White regarding the incident.

Plaintiff continued to complain of shoulder pain during checks which were periodically conducted throughout the one night duration of his placement in ambulatory restraints, no medical care was provided.

The next day Plaintiff was removed from restraints and taken for an x-ray. It is asserted that Doctor Edinger, a prison physician, reviewed the x-ray which revealed that the inmate had broken his collarbone in multiple places. The Plaintiff was transferred to an outside hospital for further treatment. Doctor Edinger, who felt that surgery was required, subsequently referred Porter for evaluation by an outside orthopedic specialist, Doctor Ball.

Ball conducted an evaluation on October 10, 2012 and performed surgery on October 19, 2012 which included the placement of a rod and screws. As previously noted, the FTCA claims against Doctors Ball and Edinger and outside hospital staff were previously dismissed.

In sum, Plaintiff has two surviving FTCA claims: (1) he was subjected to an assault and battery by White on October 2, 2012, and (2) EMT Potter and other prison staff were negligent for not providing Plaintiff with immediate treatment for his broken shoulder and allowing him to be held overnight in ambulatory restraints.

Presently pending is the Defendant's second motion for summary judgment. See Doc. 94. The opposed motion is ripe for consideration.

## Discussion

Defendant claims entitlement to entry of summary judgment on the grounds that: (1) video recordings of the incident show that the force used by Officer White was reasonable and did not constitute assault and battery; (2) the placement of Porter in ambulatory restraints following medical approval was reasonable and consistent with BOP; policy; (3) the summary judgment records demonstrates that Porter cannot establish a prima facie medical negligence claim. <u>See</u> Doc. 98, p. 17.

## Standard of Review

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>See also</u> <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law*.* <u>Anderson v. Liberty Lobby, Inc.</u>*,* 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. <u>Id</u>. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. <u>Saldana</u>, 260 F.3d at 232; <u>see</u> <u>also</u> <u>Reeder v. Sybron Transition Corp.</u>*,* 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. <u>Versarge v. Township of Clinton</u>, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**FTCA**

As previously discussed by this Court's March 29, 2016 Memorandum and Order, the FTCA provides a remedy in damages for tortious conduct by employees of the United States. See Simon v. United States, 341 F. 3d 193, 200 (3d Cir. 2003). The only proper Defendant for purposes of an FTCA claim is the United States of America. See 28 U.S.C. § 2679(d). Generally, an FTCA claim is limited to recovery of the sum certain amount requested in the

underlying administrative claim.  See McMichael v. United States,
856 F.2d 1026, 1035 (8th Cir. 1988).[3]

A federal district court in considering a FTCA action must
apply the law of the state in which the alleged tortious conduct
occurred, in this case, Pennsylvania.  28 U.S.C. § 1346(b) (1996);
Toole v. United States, 588 F.2d 403, 406 (3d Cir. 1978); O'Neal v.
Department of Army, 852 F. Supp. 327, 334-35 (M.D. Pa. 1994);
Turner v. Miller, 679 F. Supp. 441, 443 (M.D. Pa. 1987).  The
applicable law with respect to the burden and quantum of proof
under the FTCA remains that of the state in which the alleged
tortious conduct occurred.  Hossic v. United States, 682 F. Supp.
23, 25 (M.D. Pa. 1987).

Liability under the FTCA only exists for conduct by
government employees while acting within their scope of employment.
Matsko v. United States, 372 F.3d 556, 559 (3d Cir.  2004).  When
determining if a defendant was acting within the scope of his
employment at the time of the underlying incident, courts must look
to the law of the state where the incident occurred.  Doughty v.
United States Postal Service, 359 F. Supp.2d 361, 365 (D.N.J.
2005).

---

3.    Specifically, 28 U.S.C § 2675(b) provides:

> Action under this section shall not be instituted for
> any sum in excess of the claim presented to the federal
> agency, except where the increased
> amount is based on newly discovered evidence not
> reasonably discoverable at the time of presenting the
> claim to the federal agency, or upon allegation and
> proof of intervening facts, relating to the amount of
> the claim.

The FTCA also provides a remedy in damages for the simple negligence of employees of the United States to protect federal inmates. <u>United States v. Muniz</u>, 374 U.S. 150, 150 (1963). In presenting a FTCA claim, a plaintiff must show: (1) that a duty was owed to him by a defendant; (2) a negligent breach of said duty; and (3) that the negligent breach was the proximate cause of the plaintiff's injury/loss. <u>Mahler v. United States</u>, 196 F. Supp. 362, 364 (W.D. Pa. 1961). In cases such as this which involve federal prisoners, it has been recognized that the government's duty of care is one of ordinary diligence. <u>See</u> 18 U.S.C. § 4042

A plaintiff is required under Pennsylvania law, to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence. <u>Baum v. United States</u>, 541 F. Supp. 1349, 1351 (M.D. Pa. 1982). Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. <u>Hamil v. Bashline</u>, 392 A.2d 1280, 1284 (Pa. 1978).

**<u>Assault/Battery</u>**

Defendant contends that while Correctional Officer White was escorting the Plaintiff back to his cell following a medical evaluation on October 2, 2012, the inmate made repeated verbal threats.[4] In response, White gave Porter verbal directives to calm down and took a tighter hold on the prisoner to control his movement. <u>See</u> Doc. 98, p. 9. After White gave Plaintiff an additional verbal warning in response to another threat, the inmate

---

4. The medical assessment was purportedly undertaken because Porter had been involved in an altercation with his cell mate.

allegedly "suddenly pulled away from Officer White in the direction of a stairway."  Id.

According to the Defendant, White perceived that action as an attempt by Plaintiff to strike the officer in the chest with his left shoulder and elbow.  White admittedly responded by taking Porter to the floor.  Other nearby correctional officers arrived and assisted White.

The Defendant argues that White acted in accordance with BOP training which directs escorting officers to regain control of a prisoner who pulls away by placing the inmate on the ground.  Since the record shows that the force exercised by White was objectively reasonable and only that which was necessary to gain control of the inmate, the Defendant asserts that it is entitled to entry of summary judgment with respect to the assault and battery claim.

In support of its argument, the Defendant has submitted a declaration under penalty of perjury by USP-Lewisburg Attorney Advisor Michael Romano and accompanying institutional records which show that Plaintiff is a convicted murder with an extensive disciplinary history while in federal custody including past misconducts for assault, fighting, possession of a weapon, and threatening bodily harm.  See Doc 977-1, Exhibit 1.  Moreover, the records show that Plaintiff was suspected of involvement in an altercation with his cell mate immediately prior to the incident involving Officer White.  See id., p. 76.

Also submitted by the Defendant is a copy of BOP Program Statement § 552.20 which provides that prison staff must use only that amount of force necessary to gain control of an inmate.  See id. at p. 50. The policy adds that a BOP employee may not use force

8

beyond that which is reasonably necessary to subdue an inmate and only after attempts to gain voluntary cooperation from the prisoner have failed.  This BOP policy further provides that staff may use force for self defense.

In a declaration under penalty of perjury, Officer White states that on October 2, 2012 Plaintiff was removed from his cell for a medical assessment based upon an indication that the inmate had been involved in an altercation with his cell mate.  See id., p. 148. Following the assessment, White escorted Inmate Porter to another housing unit.  When Plaintiff made a verbal threat during the escort, White directed the Plaintiff to calm down.  While making their way down a corridor Porter allegedly threatened to kick the officer and was again told to cooperate.  When the inmate made additional verbal threats, White admits that out of concerns over Plaintiff's conduct he took a firmer hold of the inmate in order to control his movement.

Upon entering the cell block, White avers that Potter "pulled away from me", an action which White "perceived as an attempt to strike him in the chest with his left shoulder and elbow."  Id. at p. 149. Officer White acknowledges that he responded by placing the Plaintiff on the floor.

Other supporting institutional records provided by the Defendant include a written report of the incident by Correctional Officer White.  See id., p. 82.  Therein, White describes Porter as being agitated and irritated during the escort.  The officer adds that Plaintiff became aggressive and attempted to pull away from my grasp.  In doing so, White contends that Porter threw his left shoulder and elbow into my chest.  White adds "I then regained

9

control of the inmate by placing him on the floor with the least amount of force necessary." Id. Correctional Officer Admire also submitted a statement stating that he personally observed the incident and reiterates White's version of the events. See id. at p. 83. Video footage of the incident has also been submitted by the Defendant and reviewed by the Court.

The United States waives immunity for certain intentional torts committed by prison guards. See Millbrook v. United States, 133 S.Ct. 1441, 1444 (2013). Assault and battery are intentional torts. Liability under the FTCA only exists for conduct by government employees while acting within their scope of employment. Matsko v. United States, 372 F.3d 556, 559 (3d Cir. 2004). The undisputed record shows that Correctional Officer White was acting within the scope of his employment as the underlying events transpired as he was escorting Plaintiff to a cell.

Under Pennsylvania state law, "an intentional attempt to inflict physical injury on another constitutes assault and the actual infliction of such injury, however minor, constitutes battery." Fulks ex rel. Daniel v. Gasper, 439 F. Supp.2d 372, 379 (M.D. Pa. 2006); Heverly v. Simcox, 2006 WL 2927262 *9 (M.D. Pa. Oct. 11, 2006)(Jones, J.). To establish liability it must be shown that the officer acted intentionally but also that the officer knew that the force applied was not reasonable under the circumstances or excessive. Tarlecki v. Mercy Fitzgerald Hospital, 2002 WL 1565568 *2 (E.D. Pa. July 15, 2002).

Also submitted for consideration is video footage from two stationary surveillance cameras. It is noted that the video lack audio. The video evidence has been reviewed by this Court in a

light most favorable to the Plaintiff, See Tindell v. Beard, 351
Fed. Appx. 591, 596 (3d Cir. 2009)(consideration of video footage
when considering summary judgment argument is appropriate). The
footage captures the entire take down incident and is not
susceptible to multiple reasonable interpretations. See Scott v.
Harris, 550 U.S. 372, 380 (2007).

Specifically, the footage shows Plaintiff passing through a
unit door way with Officer White on his left side. The Plaintiff
is handcuffed with his hands behind his back and White is grasping
the inmate. Another correctional officer, presumably Admire, is a
short distance behind the pair. Upon entering the housing unit,
Plaintiff clearly turns away from the escorting officer towards an
open stairway leading up to another level. Porter does not make
any apparent physical contact with White, but he clearly tries to
pull away and head in a different direction.

White responds by forcing the inmate to the ground and
holding him there until other guards intervene. The video does not
reflect that White slammed the inmate to the floor and the
correctional officer does not punch, kick, or otherwise strike the
prisoner. Rather, the correctional offices simply forced the
inmate as well as himself to the floor

As such the undisputed evidence establishes that the action
taken by Officer White was reasonable under the circumstances and
was not excessive. This is cleary a case where a correctional
officer reasonably perceived that a prisoner was making an
aggressive move and use only that force which was necessary to
regain control. The request for summary judgment on the
allegations of assault and battery will be granted.

11

**Ambulatory Restraints**

It is undisputed that Plaintiff was placed in ambulatory restraints for a period of fifteen (15) hours. BOP Program Statement § 552.20 provides that physical restraints are authorized to gain control over an inmate assault another individual, becomes violent or displays signs of imminent violence. See Doc. 97-1, p. 50.

A significant limitation on FTCA claims is imposed by 28 U.S.C. § 2680(a), which provides that liability may not be premised on a claim against a government employee which is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." "Conduct is not discretionary unless it involves an element of judgment or choice.' Koch v. United States, 814 F. Supp. 1221, 1227 (M.D. Pa. 1993). Federal employees such as correctional officers employed by the Bureau of Prisons simply "do not have discretion to violate mandatory requirements" or constitutional rights. Koch, 814 F. Supp. at 1228.

In Berkovitz v. United States, 486 U.S. 531 (1988), the United States Supreme Court adopted a two part inquiry with respect to § 2680(a). First, a court must decide if "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." Id. at 536. If so, "the employee has no rightful option but to adhere to the directive." Id. The second part of the inquiry provides that if the decision was one "which balances competing considerations or identifiable policy factors such as budgetary considerations, safety concerns, allocation of limited resources, etc. may be discretionary." Koch, 814 F. Supp

12

at 1227, citing Johnson v. United States, Department of the Interior, 949 F.2d 332, 340 (10th Cir. 1991).

Ambulatory restraints are soft and hard equipment which allow the inmate to eat, drink, and take care of basis human needs without staff intervention. See id. at p. 60. The use of ambulatory restraints should cease when it is determined that the inmate has regained self-control. Under BOP regulation, a medical assessment is performed prior to the application of restraints and any injuries should be immediately treated. See id. at p. 66.

With respect to the first prong of Berkovitz, 18 U.S.C. § 4042 imposes a general duty of care on the BOP to safeguard its prisoners. However, the regulation does not dictate the manner by which that duty is to be fulfilled. See Cohen v. United States, 151 F.3d 1338,1343 (11th Cir. 1998). Hence, the BOP has the ability to exercise its judgment on how its duty under § 4042 is to be fulfilled.

While the BOP imposes a duty upon its employees to use reasonable care and ordinary diligence to protect the safety of inmates. Restraints may be employed at the discretion of prison officials to the extent necessary to gain control over inmates who have destroyed property; inflicted injury upon self; become violent or display signs of imminent violence.

The challenged decision making of the non-medical prison officials in this case clearly involved an element of choice. Given Plaintiff's conduct on the date in question, the determination to apply ambulatory restraints, was based upon consideration of legitimate issues of correctional safety. Moreover, the imposition of ambulatory restraints was given medical

13

approval.  In light of those considerations, this Court agrees that the discretionary function exception is applicable to any claims regarding the decision making by USP-Lewisburg non-medical staff with respect to the use of ambulatory restraints against Porter. See Donaldson v. United States, 281 Fed. Appx. 75, 77 (3d Cir. 2008)(discretionary function exception applies to prisoner's claim against federal prison officials).

There have been no facts presented which could support a claim that Plaintiff's conduct at USP-Lewisburg did not warrant intervention by prison staff on the relevant date.  For example, prior to the incident Plaintiff was suspected of having been involved in an altercation with a cell mate and evidence presented by the Defendant shows Porter acting in an aggressive manner prior to the imposition of ambulatory restraints on October 2, 2012. Second, the videotape also clearly shows that the restraints were applied only after a favorable medical assessment by EMT Potter. The determination as to whether ambulatory restraints, should be employed against Porter was clearly a discretionary decision. Based upon the summary judgment record, the challenged decision making by USP-Lewisburg non-medical staff falls within the discretionary function exception.  Accordingly, entry of summary judgment in favor of the Defendant under the discretionary function exception is warranted with regards to any claim regarding the placement of Porter in ambulatory restraints by correctional officers.

**Medical Assessments**

Under BOP regulations, a medical assessment is performed prior to the application of restraints and any injuries should be

14

immediately treated.  See Doc. 97-1, p. 66.  BOP regulations further provide that an inmate in ambulatory restraints is checked by correctional staff every fifteen minutes, a lieutenant every two hours, and by medical staff twice each eight hour shift.  During those medical checks the prison's health services staff are required to examine an inmate's injuries and any other significant findings.  See id. at p. 63.

This Court's March 29, 2016 Memorandum and Order noted that Porter's allegation that Doctor Edinger, upon first seeing the Plaintiff the same day he was released from restraints, stated that he couldn't understand how no one noticed Porter's broken collarbone as the bone was sticking upwards and stabbing into his flesh arguably alleged an exception to Pennsylvania Rule 1042.3 which requires the filing of a certificate of merit.[5]

As previously discussed, the Complaint contends that an initial medical assessment by EMT Potter following the October 2, 2012 incident was negligent because it allowed Plaintiff to be

---

5.  Rule 1042.3 requires a person who brings a claim of medical malpractice/negligence to file an appropriate certificate of merit either with the complaint or within sixty (60) days thereafter.  The Rule 1042.3 certificate must certify that either: (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the conduct which is the subject of the complaint fell outside acceptable professional standards and was a cause in bringing about the harm; (2) the claim of deviation by defendant from an acceptable professional standard is based solely upon allegations that other licensed professionals for whom defendant is responsible deviated from an acceptable professional standard; (3) expert testimony of an appropriate licensed professional is unnecessary.

The only exception to this rule is where the matter "is so simple and the lack of skill or want of care is so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons."  Berman v. United States, 205 F. Supp.2d 362, 264 (M.D. Pa. 2002) (citing Brannan v. Lankenau Hospital, 490 Pa. 588 (1980).

placed in ambulatory restraints and failed to properly evaluate the inmate's shoulder injury. Plaintiff further contends that members of the prison's medical staff who thereafter conducted periodic assessments of his condition during the fifteen (15) hours he was in ambulatory restraints were also negligent for failure to properly investigate and treat his untreated fractured clavicle.

The Defendant presently argues that it is entitled to sentry of summary judgment because no BOP staff member erroneously diagnosed or unnecessarily delayed Plaintiff's diagnosis and treatment. See Doc. 98, p. 32.

As discussed above, a federal district court addressing an FTCA action must apply the law of the state, in this case Pennsylvania, in which the alleged tortious conduct occurred. Arrington v. Inch, 2006 WL 860961 *7 (M.D. Pa. March 30, 2006) (Conner, J.)(a Plaintiff pursuing an FTCA claim must comply with Pennsylvania substantive law). In order to prove his negligence claim under Pennsylvania state law, Porter must establish that the USP-Lewisburg medical staff deviated from acceptable medical standards when they made medical assessments and to show that said deviation constituted a substantial factor in causing the Plaintiff's injury.

A submitted copy of a written report of the initial medical assessment conduct by EMT Potter acknowledges that Plaintiff complained that his jaw and shoulder were broken. See Doc. 97-1, Attachment K, p. 106. Potter opines that Plaintiff acted as if in pain before the EMT even physically examined his right shoulder, there no negative deformity of the right shoulder, and the clavicle

appeared solid and intact.  Despite those initial findings, Potter ordered that x-rays taken of the shoulder and jaw the next day.

A declaration under penalty of perjury by Potter similarly acknowledging that he conducted a medical assessment of Porter following the incident with Officer White.  See id. at p. 112. Potter states he observed and treated an abrasion above the Plaintiff's right eye and examined the inmate's jaw in response to a complaint of pain.  The EMT also admits that Plaintiff complained of pain in the right clavicle but that the clavicle appeared solid and intact during a physical exam.

During a subsequent ambulatory restraint check, Potter states that Plaintiff was laying on his right side applying weight to the injured shoulder.  Potter directed Plaintiff not to apply weight to the shoulder that was bothering him.

A copy of an ambulatory restraint check by MLP Francis Fasciana conducted of the morning of October 3, 2012 indicates that Porter complained of right shoulder pain.  See id. at p. 139. However, none of the other written periodic restraint checks which have also been provided to the Court note any complaint of shoulder pain by Inmate Porter.

The Defendant has also provided a declaration under penalty of perjury by Doctor Edinger who confirms that he saw the Plaintiff on October 3, 2012 (the day after the incident) for complaints of shoulder and jaw pain.  Edinger states that x-rays revealed a "comminuted (broken in multiple places) and displaced fracture of the right clavicle and a possible new fracture of the right side of

17

his mandible."[6] Id. at p. 160.  Per Edinger's directive, the
Plaintiff was taken to an outside hospital where it was determined
that he had a clavicle fracture.  Porter was returned to the prison
that same day with his right arm in a sling and a prescription for
pain medication.  Edinger does not address the Plaintiff's
assertion that the doctor stated that the clavicle injury was
apparent.

A videotape of the initial assessment by EMT Potter has also
been submitted.  The videotape starts at 6:03 p.m. with Plaintiff
shown lying on the floor with his hands handcuffed in the rear.
Porter is lifted to his feet by his arms.  He voices no complaints
of shoulder injury at that juncture.  The prisoner's back is
briefly shown at that time and there is no visible indication of a
shoulder injury.

The Plaintiff while bent over is then walked a few feet to a
shower area where he is wanded with a metal detector and his
clothes are removed.  A correctional officer has his hand on
Plaintiff's right shoulder area.   During this period Plaintiff is
silent and does not appear to be in pain.  EMT Potter is shown
treating an abrasion above the Plaintiff's right eye and examining
the inside of the prisoner's mouth.  While doing so Plaintiff cries
out in pain stating that he thinks his jaw I broken.  Potter
physically examines the jaw area.  Potter does not examine
Plaintiff's shoulder at that point.

After EMT Potter backs away, Porter's hand restraints are
moved from the back to the front and a clean shirt is placed on

6.  According to Dr. Edinger Plaintiff had a history of multiple
jaw fractures.

him.  During this procedure, Plaintiff cries out in pain and states three times that he thinks his collarbone is broken.  Plaintiff also requests to be seen by a doctor.

EMT Potter then reenters the shower checks the newly applied restraints and conducts a brief examination of Plaintiff's shoulder area. Potter's back is to the camera and his exact actions  cannot be determined.  During this period, Porter cries out in pain at one and the EMT indicates that he was not even touching the Plaintiff.

Porter is then escorted down a hallway and placed in a cell. Plaintiff is able to walk on his own and he is again silent.  He is last seen sitting upright on a bed in the cell.  Next the videotape shows a debriefing during which EMT Potter states that although Plaintiff made complaints of pain in his jaw the inmate's physical actions were unusual for someone with a broken jaw.  With respect to Plaintiff's shoulder area, Potter notes that Porter did not make any complaints of shoulder pain until halfway through the process, the inmate recoiled in pain before the EMT even touched the relevant shoulder area, and that upon physical examination of the area no real deformity was noted.  Despite those observations, Potter states that he did order x-rays of both the shoulder and jaw for the following morning.

It is undisputed that upon Plaintiff's release from restraints the following morning, x-rays were taken of his shoulder area and he was evaluated by Doctor Edinger.  Based upon Edinger's evaluation,  Plaintiff was transported that same day to an outside hospital for further treatment of a suspected clavicle fracture. Porter was returned to the prison that same day with a sling and a prescription for pain medication.

Under Pennsylvania state law, in order to present a *prima facie* case of medical malpractice, medical negligence, a plaintiff has the burden of presenting an expert witness who can testify to a reasonable degree of medical certainty that the actions or omissions of the defendant deviated from acceptable medical standards, and that said deviation constituted a substantial factor in causing the Plaintiff's injury. <u>Simpson v. Bureau of Prisons</u>, 2005 WL 2387631 *5 (M.D. Pa. Sept. 28, 2005)(Vanaskie, C.J.). The only exception to this rule is where the matter "is so simple and the lack of skill or want of care is so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons." <u>Berman v. United States</u>, 205 F. Supp.2d 362, 264 (M.D. Pa. 2002) (citing <u>Brannan v. Lankenau Hospital</u>, 490 Pa. 588 (1980). The instances when expert opinions may be unnecessary are rare. <u>See</u> <u>Simpson</u>, 2005 WL *6; <u>Arrington v. Inch</u>, 2006 WL 860961 *7 (M.D. Pa. March 30, 2006) (Conner, J.)

It is undisputed that USP-Lewisburg owed Porter a duty to provide him with timely and appropriate medical care for his shoulder. Based upon the factual evidence submitted by the Defendant, Porter has not established that there are issues of material fact as to whether the actions taken by the USP-Lewisburg medical staff, particularly EMT Potter, constituted an obvious lack of skill or want of care. First, Porter has not presented any facts showing that his overnight placement in ambulatory restraints aggravated his shoulder injury.[7] Second, given that the injury occurred in the evening and an x-ray was

---

7. Clearly, whith his hands shackled in front Porter's arm movements were limited almost as if his right arm was in a sling.

taken the following day Plaintiff has not asserted that it was possible for an x-ray to have been taken earlier at USP-Lewisburg. Moreover, even if such an x-ray had been taken Plaintiff has not indicated that there was beneficial treatment which could have been provided immediately.

The factual record, specifically the periodic assessments of Porter during the overnight period do not show that the Plaintiff was in constant pain or that he his injury was aggravated  as a result of either the ambulatory restraint placement or the failure to have an immediate x-ray. These shortcomings are bolstered by the fact that when taken to an outside hospital the following day the Plaintiff was released back to the prison after being given a pain medication prescription and a sling.

Based upon the above concerns, this Court is satisfied that Porter's case does fall under the limited exception recognized in <u>Berman</u>.  Thus, this is clearly the type of case where the Plaintiff, in order to state a *prima facie* case of negligence under controlling Pennsylvania state law,  must come forward and provide expert medical testimony showing that the decisions and actions by the USP-Lewisburg medical staff deviated from acceptable standards of the profession.  Porter has failed to do so.

Plaintiff's opposing brief suggests that an expert witness should be appointed to assist him.  <u>See</u> Doc. 103, p. 6. This Court does have the discretion to appoint an expert witness under Federal Rule of Evidence 706.  "The policy behind this rule is to promote the jury's factfinding ability."  <u>Ford v. Mercer County</u>

Correctional Center, 171 Fed. Appx. 416, 420 (3d Cir. 2006).
The Court of Appeals added that "[a] trial judge does not abuse
his discretion in declining to appoint an independent expert
solely to benefit a party who has otherwise failed to gather such
evidence as would suffice to overcome summary judgment." Id.

Based on this Court's application of Ford to the present
record, appointment of an expert witness at this time would
solely be for the purpose of assisting the Plaintiff's opposition
to a summary judgment motion. Porter has failed to come forward
with an expert witness or any other competent medical evidence to
support his assertions of negligence. Based on an application of
standards announced in Ford, the Court feels that it would be an
abuse of discretion to appoint an expert witness under Rule 706
at this stage of the proceedings. The Defendant is also entitled
to entry of summary judgment with respect to this remaining FTCA
claim. An appropriate Order will enter.


                          S/Richard P. Conaboy
_____RICHARD P. CONABOY
                          United States District Judge


DATED: MARCH 27 , 2018